IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS J. KALISZEWSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 03-216E |
| | ) | Judge Sean J. McLaughlin |
| SHEET METAL WORKERS' | ) | Magistrate Judge Lisa Pupo Lenihan |
| NATIONAL PENSION FUND, et al. | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

## I. RECOMMENDATION

It is respectfully recommended that the Motion for Summary Judgment (Docket #31)

filed by Defendants and Counterclaim Plaintiffs, Sheet Metal Workers' National Pension Fund

(the "Fund"), and its Board Trustees, Administrators and Appeals Committee (hereinafter the

"Fiduciaries" or, collectively, "Defendants"), be denied.

## II. REPORT

This case involves the question of an ERISA plan's entitlement to recoup approximately

nine years of benefit overpayments made to a retiree-beneficiary as a result of the Fund's error.[1]

---

1.  It may further involve the question of whether, if the plan is entitled to recoupment, it may
effect recovery by unilaterally reducing the beneficiary's monthly pension payments below the
amount of his correctly-calculated benefit. Compare Tucker v. General Motors Ret. Program,

(continued...)

Because this Court could find, under a fully-developed record, that the balance of equities does not weigh in favor of restitution, Defendants' Motion for Summary Judgment should be denied.[2]

## A. **Statement of Facts and Procedural History**

The Fund is a national multi-employer, defined benefit pension plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, et seq. ("ERISA").[3] Plaintiff is a retired sheet-metal industry employee and a Fund participant and beneficiary. As of December 31, 2003, the Fund had more than 135,000 beneficiaries and paid over $325 Million in annual pension payments. It is administered by a Board of Trustees.

Plaintiff originally retired from Rabe Environmental Systems ("Rabe") on June 28, 1989, with an effective pension date of August 1, 1989. He returned to work at his Union's request in

---

1. (...continued)
949 F.Supp. 47, 55 (D. Mass. 1996) (concluding that ERISA permits set-offs of retirement benefits in order to recoup overpayments); Eubanks v. Prudential Insur. Co. of Am., 336 F.Supp.2d 521, 531-32 (M.D.N.C. 2004) (permitting offset for benefit overpayments after determining case fell within regulatory exception to ERISA's anti-alienation provision for pension benefits) with Bauhaus U.S.A., Inc. v. Copeland, 292 F.3d 439, 453-54 & n. 35 (5th Cir. 2002) (Weiner, J., dissenting) (observing that "Congress likely not intend that [fund] recover against a beneficiary's interest in the Plan - in other words, a beneficiary's right to further . . . benefits"). It should also be noted that Tucker was decided prior to the Supreme Court's opinion in Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204 (2002). See discussions, infra.

2. Although Plaintiff requests a jury trial in this matter, the courts are "unanimous in holding that [ERISA] benefit claims as well as claims for breach of fiduciary duty and other statutory violations" do not entail a right to a jury trial. See Ronald G. Dean, Nancy G. Ross, Procedural Aspects of Litigating ERISA Claims, ALI-ABA, SK079, February 24, 2005.

3. The provisions of ERISA include the establishment of "standards of conduct, responsibility and obligation for fiduciaries of employee benefit plans." Id. at §1001(a)-(b).

February, 1991 and his pension was suspended. In December, 1992, Plaintiff advised the Fund

that he intended to re-retire at the end of February, 1993, and inquired about his options. The

Fund, through its Benefits Department Analyst, Robert Horn ("Horn"), advised Plaintiff that he

would be eligible for a higher contribution rate credit if he worked until March 1, 1993, which

Plaintiff did. Plaintiff's prior pension benefits were therefore reinstated effective March, 1993,

and the Fund advised him that his benefit would be retroactively increased for his additional

credited service once the amount had been calculated by the Fund's actuarial consultant.[4]

The Fund's actuary, The Segal Company ("Segal"), correctly calculated Plaintiff's benefit

option amounts and conveyed them to Horn in May, 1993. However, Horn incorrectly used the

amount of Plaintiff's single-life annuity option, $1,693, rather than his "Husband and Wife Level

Income Pension", *i.e.*, $1,463 with a $732 survivor benefit.[5] Horn then erroneously instructed the

Fund's payment agent, John Hancock Company ("Hancock"), as to Plaintiff's benefits, resulting

---

4. See May 3, 1993 letter from Fund Administrator Walter Carlough to Plaintiff (Complaint, Ex. 7).

5. Because the former has no survivor-benefit component, it generally pays a higher monthly benefit. The Husband and Wife election provides both a monthly benefit to the beneficiary and a 50% survivor benefit to his/her spouse. Indeed, it was the absence of this 50% relationship between Plaintiff's then-current and survivor benefit amounts that caused a Fund employee to further review Plaintiff's pension file documents in June, 2002. See Memorandum of Law In Support of Defendants' Motion for Summary Judgment at 5.

3

in an overpayment of $230 per month.[6]  The Memorandum from Horn to Hancock containing the

erroneous benefit information was copied to Plaintiff at that time.  See Memorandum of Law In

Support of Defendants' Motion for Summary Judgment at 4.

The Fund provided the erroneous benefit from March, 1993 through July, 2002, resulting

in a total overpayment of $25,990.  The parties dispute how the error came to the Plan's attention,

but by letter of June 26, 2002, the Fund notified Plaintiff of the error made in his monthly

pension.[7]  It also unilaterally began major reductions in the monthly retirement benefits that

Plaintiff had been receiving.  In addition to reducing Plaintiff's benefit from the overpayment

amount to the amount to which he was entitled under his election, the Fund *further* reduced

Plaintiff's monthly payment by an additional twenty-five (25%) percent to begin to recoup the

amounts paid in error.[8]  The withholding was subsequently reduced to ten (10%) percent in May,

---

6. Prior to May 1, 1996, daily administration was handled by personnel employed directly by the the Fund.  Since that time, Associated Third Party Administrators, Inc. ("ATPA") has acted as the Fund's administrator.  See Defendants' Concise Statement of Material Facts at ¶ 31.

The Fund's Pension Manager has identified approximately $307,000 in pension benefit overpayments made to fifteen beneficiaries, including Plaintiff, as a result of mistakes by administrative staff.  As of December, 2004, it had recouped approximately $51,000.  See Defendant's Concise Statement of Material Facts at ¶ 30.

7. See Complaint, Ex. 11.  Plaintiff maintains that he did not even receive this letter until September, 2002, after his benefits had begun to be reduced.

8. The correspondence permitted Plaintiff the option of reimbursing the Fund in full by check and advised him of his right to appeal the Fund's decision to the Board of Trustees, which he did. In his counsel's correspondence of December 2, 2002, Plaintiff acknowledged the Fund's entitlement to correct his pension to $1,463 per month as of August 2002, but requested that the repayment adjustments "be abandoned."  Complaint, Ex. 13

4

1993, following Plaintiff's retention of legal counsel and administrative appeal of the Fund's decision to reduce his monthly benefits.[9]  Plaintiff brought this action on July 8, 2003.

Plaintiff's Complaint against the Fund, its Board Trustees, Administrators and Appeals Committee alleges a breach of fiduciary duty in violation of ERISA with respect to the Fund's error as to his pension benefits between March, 1993 and July, 2002, and the withholding of his benefits beginning August, 2002. See Complaint (alleging that the Defendants failed to exercise the care of a "reasonably prudent person", as required by ERISA, with regard to his benefits).[10] Plaintiff seeks to prohibit the Fund from recovering the overpayments; seeks reversal of the administrative denial of his appeal by the Fund's Appeals Committee in April, 2003; and seeks

---

9.  Plaintiff's appeal was denied by the Fund by letter of April 9, 2003.

The parties dispute the amount withheld from Plaintiff's benefit payments since reductions began in August, 2002.  Plaintiff attests that he received $1,097 per month (a 25% reduction) in the nine (9) month period from August, 2002 through April, 2003, and $1,316 (a 10% reduction) from May, 2004 through at least August, 2004.  As of February 15, 2005, he alleges total withholding in excess of $6,500.  The Fund alleges that as of December 1, 2004, it had recouped $3,882; Plaintiff contends this figure should be $4,373.

10.  See also Plaintiff's Brief in Support of Motion for Amendment of Case Management Order at 5 (asserting breach of fiduciary duty as to erroneous pension benefit and failure to inform for over nine years); Plaintiff's Memorandum of Law In Opposition to Motion for Summary Judgment at 10-11 (alleging that determination of benefit by single administrator was unreasonable and was subsequently revised to require supervisory review of Fund administors' benefit determinations).  Cf. Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 152-53 (1985) (Brennan, J., concurring) (noting that "Congress intended . . . to incorporate the fiduciary standards of trust law into ERISA, and it is black-letter trust law that fiduciaries owe strict duties running directly to beneficiaries in the administration and payment of trust benefits").

The fiduciary duty owed by ERISA administrators and trustees is founded in negligence principles and requires these individuals/entities to discharge their duties so as, at a minimum, to cause no harm to the beneficiary as a result of a failure to exercise reasonable care.  See Phillips v. Maritime Association-I.L.A. Local Pension Plan, 194 F.Supp.2d 549, 556 (E.D. Tex 2001); See also 29 U.S.C. § 1104(a)(1).

5

reimbursement of the amounts withheld, from August 2002 to date, from the monthly benefit to

which he is entitled under the Plan.[11]   Plaintiff also seeks attorney fees pursuant to § 502(g).[12]

Plaintiff alleges that he kept his monthly pension benefits in a personal checking account,

utilized for his own and his spouse's day-to-day living expenses, and that he budgeted such

expenses in reliance on his pension income, in accordance with the Fund's representations.   He

---

11.  Cf. Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Amendment of
Case Management Order at 3 (observing that "[w]hile this case has been plead as a breach of
fiduciary duty claim, the dispute is over the calculation of the Plaintiff's pension benefit and
whether the . . . [Fund may] recoup the overpayment"); 4 ("Plaintiff's claim is one for benefits").

See, e.g., Forsyth v. Humana, Inc., 224 F.3d 1467 (9th Cir. 1997) (correcting Plaintiff's
allegations from breach of fiduciary duty to one for "benefits breach of contract" under §
1132(a)(1)); id. at 1475 (concluding that § 1132(a)(3) permits individual cause of action for
breach of fiduciary duty only where no other adequate relief is available, and plaintiff was
entitled to recoupment/restitution of amount that should have been paid by plan under breach of
contract provisions of § 1132(a)(1)).

To further clarify, ERISA provides several statutory rights of action.  Among them, §
502(a)(1) enables a participant or beneficiary to recover benefits due, to enforce his entitlement
to benefits under the plan, and/or to clarify his right to future benefits; these are often referred to
in the case law as "contractual damages."  See Mass. Mut. Life. Ins. Co. v. Russell, 473 U.S. 134
(1985).  Additionally, § 502(a)(2) enables a participant, beneficiary or fiduciary to bring a
derivative action to obtain plan-wide relief for a breach of fiduciary duty; while § 502(a)(3)
enables a participant, beneficiary or fiduciary to enforce the provisions of ERISA and/or the plan
documents.  The latter statutory provision also encompasses a participant/beneficiary's right to
bring an individual action for recovery related to a breach of fiduciary duty.  See Variety Corp. v.
Howe, 516 U.S. 489 (1996).  § 502 provides no rights of action in employers. The provisions of
ERISA § 502 are found at 29 U.S.C. § 1132.

12.  Any award of attorney's fees in this matter is entirely discretionary and would be weighed
under the "five-factor test", i.e., the relative culpability of the parties; a party's ability to satisfy an
award; the deterrent value of an award; the extent to which a party sought to benefit all plan
participants or resolve a significant ERISA issue; and the relative merits of the parties' positions.
See generally, Ronald G. Dean & Nancy G. Ross, Procedural Aspects of Litigating ERISA
Claims, ALI-ABA SK079 at 382-84, February 24, 2005 (providing extensive case citations to
Circuit Courts' application of five-factor test).

asserts that the Fund's unilateral thirty-seven (37%) percent reduction in his pension[13] worked a

significant financial hardship, that continued reduced-rate reductions remain burdensome, and

that any savings from his pension benefits have been exhausted as a result of the reductions.[14]

The Defendants filed an Answer and Counterclaim seeking a declaration that they "are

entitled to recoup the overpayments by offsetting or withholding the pension benefits that

otherwise would be payable to" Plaintiff under § 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3).[15]

See Memorandum of Law in Support of Defendants' Motion for Summary Judgment at 2, 9;

Answer and Counterclaim. Defendants further allege that permitting Plaintiff "to retain the

---

13. Plaintiff's monthly overpayment of $1,693 was corrected to $1,463, of which the Fund withheld an additional 25%, for a total percentage difference in monthly payments of thirty-seven (37%) percent.

14. Cf. Greenes v. Adornato, 2004 WL 213089 (S.D.N.Y. Feb. 4, 2004) (noting, in considering action by pension fund to recover erroneous overpayments of monthly benefit for 16 years, that restitution for beneficiary's unjust enrichment could only be had if latter had not dissipated funds, which question would be subject of discovery).

15. Defendants seek to "recoup the overpayment of pension benefits to [Plaintiff] and to obtain appropriate declaratory and other appropriate equitable relief to enforce the terms of ERISA and the Fund's plan document." Answer and Counterclaim at ¶ 44. They specifically seek enforcement under 29 U.S.C. § 502(a)(3). See id. at ¶ 47. As mentioned supra n. 11, this provision permits beneficiaries and fiduciaries (but not employers) to bring suit to "(A) enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan."

As discussed, infra, the Supreme Court's fairly recent decision in Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204 (2002), began a great deal of litigation as to what constitutes "appropriate equitable relief" under § 502(a)(3). See generally Roger C. Siske, Michael R. Maryn & Barbara L. Smith, What's New in Employee Benefits: A Summary of Current Cases and Other Developments, ALI-ABA, SK067, March 16, 2005.

7

overpayments made to him" will result in Plaintiff's "receiv[ing] more than one (1) pension, in violation of the Fund's plan document."  Answer and Counterclaim at ¶ 66.

### B. <u>Motion for Summary Judgment Standard</u>

Under Rule 56(c) of the Federal Rules of Civil Procedure, a court should grant summary judgment  when "there is no genuine issue as to any material fact and [ ] the moving party is entitled to judgment as a matter of law."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>see also</u> <u>Eichenlaub v. Township of Indiana</u>, 385 F.3d 274, 279 (3d Cir. 2004).  In considering a motion for summary judgment, the Court views all evidence in the light most favorable to the party opposing summary judgment.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 465 U.S. 574, 587 (1986).  A genuine issue exists when, in the context of the entire record, a reasonable fact-finder could return a verdict for the non-movant.  <u>Lujan v. National Wildlife Federation</u>, 497 U.S. 871, 885-86 (1990).

### C. <u>Analysis</u>

#### 1. <u>*Plaintiff's Claim*</u>

The Fund asserts that Plaintiff's claims are barred because (a) they are outside of ERISA's six-year Statute of Repose, 29 U.S.C. § 1131(1), (b) neither the Fund nor the Fiduciaries can be charged with any breach of fiduciary duty, and (c) Plaintiff seeks money damages unavailable under ERISA.

8

a. Statute of Limitations

Under the law of this Circuit, for purposes of a statute of limitations analysis, the Court

looks to the gravamen of Plaintiff's Complaint.  Plaintiff's principal claim is against the Fund for

failure to pay, since August 2002, the full amount of monthly benefit to which he is entitled

under the Plan, and it is a claim for benefit under §1132(a)(1).  See, e.g., Shiffler v. Equitable

Life Assurance Soc'y of the U.S., 663 F.Supp. 155 (E.D. Pa. 1986) (holding that although

substance of plaintiff's claim referred to breach of fiduciary duty as plan administrator, plaintiff

was essentially attempting to recover benefits due under the terms of the plan and, accordingly,

the action would fall under Section 1132(a)(1)).[16]  Accordingly, the statute of limitations did not

commence until the Fund's administrative procedures were completed and Plaintiff's claim was

---

16.  Cf. Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Amendment of
Case Management Order at 5 (noting that "[w]hen a plaintiff has plead  his case as a breach of
fiduciary duty, but the substance of the claim is one for benefits, courts in this Circuit have
treated the suit as a claim for benefits") (citing, e.g., D'Amico v. CBS Corp., 297 F.3d 287, 291
(3d Cir. 2002)).

It should also be noted at this juncture that, as Plaintiff has raised a benefit claim in which
the parties' disagreement turns on the statutory interpretation of ERISA and whether it permits a
right of restitutionary set-off, this Court's standard of review is de novo.  See Zipf v. American
Tel. & Tel. Co., 799 F.2d 889 (3d Cir. 1986) (holding that when plaintiff's position is that his
federal rights under ERISA have been violated, the question of statutory interpretation is for the
court); Samaroo v. Samaroo, 193 F.3d 185, 189 (3d Cir. 1999) (concluding that question of
statutory construction is subject to de novo review rather than deferential standard accorded plan
administrator's discretionary interpretation of plan documents).

Defendants' position that monthly benefit payments in the amount to which Plaintiff is
entitled under the plan create an extra/additional pension and thus work a violation of the plan
terms is a mischaracterization of the question at issue and is untenable.  The question before this
Court, i.e., Defendants' right to underpay Plaintiff's benefits in set-off of their previous erroneous
overpayments, raises no question of plan interpretation; it raises a purely legal question.

9

rejected, *i.e.*, in April, 2003.[17] As Plaintiff's Complaint was filed within three months thereafter, he was extremely timely.[18]

Plaintiff's claim against the remaining Defendants is one for breach of fiduciary duty, and as such is subject to ERISA's Statute of Repose, limiting actions to those brought within the earlier of

(1) six years after (a) the date of the last action which constituted a part of the breach or violation, or (b) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date on which plaintiff had actual knowledge . . . .

29 U.S.C. §1113.[19]

In bringing his breach of fiduciary claim, Plaintiff attests that he had no actual knowledge of the Fund's benefit error until his monthly payments were reduced in August, 2002; thus his filing was well within that three-year limitation. Defendants' assertions to the contrary notwithstanding, each alleged erroneous monthly benefit payment and failure to correct and disclose that error to Plaintiff (who continued to detrimentally rely upon his benefit amount in his

---

17. See D'Amico, 297 F.3d at 290-21 & n.3 (explaining that exhaustion of plan remedies is required as to claims to enforce terms of benefit plan, including cases where alleged statutory violation, *i.e.*, breach of fiduciary duty, amounts to claim for benefits under plan terms).

18. See Kineg v. Hartford Life & Accident Ins. Co., 2005 WL 1060660, *14 (E.D. Pa. May 4, 2005) (suggesting that Pennsylvania four-year statute of limitation for breach of contract claims should be applied, as most analogous, to claim for benefits under 1132(a)(1)); id. (citing Connell v. Trustees of the Pension Fund of the Ironworkers Dist. Council of N. New Jersey, 118 F.3d 154, 156 (3d Cir. 1997)).

19. Because the statute of limitations is an affirmative defense and because Defendants are the movants for summary judgment, they bear the burden of proof that Plaintiff's claims are time-barred. See Richard B. Roush, Inc. Profit Sharing Plan v. New England Mut. Life Ins. Co., 311 F.3d 581, 585 (3d Cir. 2002).

financial planning until gaining knowledge of the error in August or September, 2002) may have actively concealed the initial wrong, further misrepresented Plaintiff's pension entitlements, and/or created a new cause of action.[20]  More importantly, Plaintiff's allegations regarding the Defendants' subsequent failure to pay his full monthly benefits in accordance with the Plan constitute allegations regarding an ongoing breach.[21]  Thus,  Plaintiff's claim is within the six-year "last act" provisions of the statute.

     b.  Fiduciary Relationship

A breach of fiduciary claim cannot be maintained against the Fund for, as Defendants correctly observe, the Fund does not perform any function that meets the definition of a fiduciary with respect to itself.  See Memorandum in Support of Defendants' Motion for Summary Judgment at 18 (citing Moench v. Robertson, 62 F.3d 553, 561 (3d Cir. 1995)).[22]  As discussed

---

20. Compare Gruby v. Brady, 838 F.Supp. 820 (S.D. N.Y. 1993) (holding that where trustees breached fiduciary obligations by maintaining excess/failing to reduce certain benefit levels, trustees' alleged failure to ensure appropriate benefit payments gave rise to new cause of action each time payments were made) with Adams v. Brinks Co., 2005 WL 1330682, *57-58 (W.D. Va. June 3, 2005) (holding that although only breach of fiduciary duty was misrepresentation/overstatement of benefits contained in pension benefit letter, such breach was concealed by plan's continuing overpayment; thus beneficiary's claim was timely following discovery) (citing Caputo v. Pfizer, Inc., 267 F.3d 181, 188-90 (2d Cir. 2001)).  See Ranke v. Sanofi-Synthelabo, Inc., 2004 WL 2473282 (E.D. Pa. Nov. 3, 2002) (distinguishing cases involving factual questions of subsequent/continued detrimental reliance or subsequent actions "misrepresent[ing] Plaintiff's pension entitlements").

21. See Plaintiff's Memorandum of Law In Opposition to Motion for Summary Judgment at 15.

22. Cf. Adams v. Koppers Co., Inc., 684 F.Supp. 399, 400-401 (W.D. Pa. 1988) (dismissing § 510  claim against defendant retirement plan on the grounds that a plan cannot be a "person"); Boucher v. Williams, 13 F.Supp.2d 84, 93 (D. Me. 1988) (holding that fund was not a "person" for purposes of fiduciary liability under § 404).

*supra*, however, the gravamen of Plaintiff's claim against the Fund is one for benefit payments, for which the Fund may be liable.

As Defendants also correctly observe, individual defendants are not subject to liability for breach of fiduciary duty merely because a ministerial/clerical employee provided erroneous information to a beneficiary,[23] nor are they liable for acts or omissions occurring prior to their participation as trustees or administrators.[24] Nonetheless, to the extent they are exercising any discretionary control over the Plan or its assets, Defendants are unarguably fiduciaries and may be liable for the purposes of Plaintiff's claims as to ongoing conduct. See 29 U.S.C. § 1002(21)(A). More specifically, Plaintiff has correctly alleged that the current fiduciaries have an obligation under ERISA to accurately calculate benefits and advise participants and their beneficiaries of those benefit amounts, and to pay the amount of monthly benefit to which Plaintiff is entitled, and Plaintiff has sufficiently raised a genuine question of material fact regarding the degree of care and diligence exercised during the course of the Fund's erroneous

---

23. See Memorandum of Law In Support of Motion for Summary Judgment at 13-14 (citing Schmidt v. Sheet Metal Workers' National Pension Fund, 128 F.3d 541 (7th Cir. 1997)). But see Adams, 2005 WL1330682 at *54 (reviewing ministerial employee non-fiduciary cases and concluding they do not stand for the proposition that an administrative fiduciary with the ultimate discretion to determine the amount of benefits payable under a plan is free of liability for inaccurate information or is entitled to recoupment).

This Court understands the case law to maintain that a ministerial/clerical error is not, in itself, sufficient grounds for a breach of fiduciary action. It trusts, however, that Defendant does not mean to suggest that the ministerial nature of a contributing error is a bar to a beneficiary's recovery. See Tegtmeier v. Midwest Operating Engineers Pension Trust Fund, 390 F.3d 1040, 1047-49 (7th Cir. 2002) (concluding that pension fund did not breach fiduciary duty to plan participant where ministerial employee made misrepresentation, but relating evaluation of fund's conduct to prudent person standard).

24. Id. (citing 409 ERISA § 1109 ).

overpayments and subsequent recoupment withholdings. As to Defendants' assertions regarding the difficulties of ascertaining what overpayments occurred during the tenure of which individual Trustees, this Court again notes that the principal question before it is whether the Fund may be liable for Plaintiff's benefit claim, and that unless the Fund elects to bring a claim against its Trustees and/or Administrators, the Court need not address an apportionment of damages.

    c. Benefit Claim; Equitable Restitution

Defendant asserts that, in seeking to compel the Fund to pay the amount specified under the pension plan documents, Plaintiff is seeking money damages unavailable to him under ERISA's statutory scheme, which permits only equitable relief. See Memorandum of Law in Support of Defendants' Motion for Summary Judgment at 19 (citing Variety v. Howe, 516 U.S. 489 (1996); Ramsey v. Formica Corp., 2004 WL 1146334 (S.D. Ohio April 6, 2004)). This Court disagrees.[25] As explained above, and as expressly acknowledged by Defendants in their pleadings, Plaintiff's claim against the Fund is one for benefits expressly permitted under § 1132.

Moreover, even if Plaintiff's claims are considered under §502(a)(3), it is far from clear that he could not recover the benefits withheld from him. The Supreme Court's decision in Great-West Life clarified that § 502(a)(3) permits "those categories of relief that were typically available in equity." 534 U.S. at 204. More specifically, the Court explained that the relief available does not encompass *legal* restitution, defined as being at issue where "the plaintiff

---

25. Variety Corp. v. Howe stands for the proposition that although *individual* equitable relief for breach of fiduciary duty is unavailable under § 502 (a)(2), it is available under § 502(a)(3). See 516 U.S. at 515. Defendants' citation to Ramsey is also unhelpful for the reasons discussed *infra* n. 28.

'could not assert title or right to possession of particular property, but . . . nevertheless . . . might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him.'" Id. at 213 (quoting 1 Dobbs § 4.2(1), at 571).[26] The relief available does, however, encompass *equitable* restitution, "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." Id.[27] Plaintiff might well, therefore, maintain an action for equitable restitution seeking payment of the pension benefits withheld by the Fund. See Berger v. Nazametz, 2002 WL 1774744 at *2-3 (S.D. Ill. July 22, 2002 ) (holding that where plaintiff plan-participants sought monies "withheld" by retirement plan, particular funds "remain[ed] in" defendants' possession and recovery was permitted under ERISA); id. (distinguishing result in Great-West Life, where plaintiff plan was asserting claim against its beneficiaries for reimbursement and Court held personal liability beyond the scope of § 502(a)(3)).[28]

---

26. See also id. (further explaining that "[i]n such cases, the plaintiff's claim was considered legal because he sought 'to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money'") (quoting Restatement of Restitution § 160, comment a, pp. 641-42 (1936)).

27. See also Adams, 2005 WL 1330682, *54 (holding that appropriate equitable relief for harm to beneficiary as result of inaccurate benefit information constituting breach of fiduciary duty under § 502(a)(3) encompasses equitable restitution but not compensatory damages) (citing Mertens v. Hewitt Assoc., 508 U.S. 248, 256 (1996)); Berger v. Nazametz, 2002 WL 1774744 (S.D. Ill. 2002) (concluding that, following the Supreme Court's explications of the scope of "equitable relief" afforded under § 502(a)(3), equitable restitution survives).

28. Our sister courts in the Eastern District are also applying the Great-West Life distinction between permissible equitable restitution and impermissible legal restitution under § 502(a)(3). Compare Godshall v. Franklin Mint Co., 285 F.Supp.2d 628, 634 (E.D. Pa. 2003) (holding that freelance-worker plaintiffs wrongfully excluded from plan participation could seek money damages in form of equitable restitution and other remedies against defendants, where the funds sought "could clearly be traced to property or funds in" defendant's possession) with Ranke v.

(continued...)

14

2. *Defendant's Counterclaim*

a. Continuing Vitality of Federal Common Law of Unjust Enrichment for Fiduciaries

The Third Circuit has held that although ERISA provides no statutory right of restitution to employers,[29] "application of a federal common-law doctrine of unjust enrichment" is appropriate, and that restitution may be available to employers, for recovery from an ERISA plan for pension contribution overpayments. See Plucinski v. I.A.M. Nat. Pension Fund, 875 F.2d 1052, 1057-58 (3d Cir. 1989). In 1991, the Circuit Court expanded the scope of its federal common-law unjust enrichment doctrine to recognize an action by an ERISA fund itself, for

---

28. (...continued)
Sanofi-Synthelabo, Inc., 2004 WL 2473282 (E.D. Pa. Nov. 3, 2004) (concluding that request for reinstatement of benefits was "closer in nature to a legal remedy not contemplated by ERISA § 502(a)(3)" where plaintiffs were "not alleging that they [were] in fact entitled to . . . benefits under the" plan terms, but claimed entitlement to the benefits "because they suffered harm from reliance on defendants' misrepresentations"); id. (noting that form of relief was therefore non-equitable "compensation for loss resulting from" breach of duty). Here, Plaintiff seeks full payment of the monthly benefit amounts to which he is entitled under the applicable plan documents.

It is for this reason that this Court finds Ramsey v. Formica Corp., 2004 WL 1146334 (S.D. Ohio April 6, 2004) - relied upon in Defendants' Memorandum of Law and attached thereto - inapposite. As in Ranke, the Ramsey plaintiffs sought, not the monthly benefits to which they were entitled under the plan, but "compensatory damages" for their reliance on defendant's misrepresentations. More specifically, the Ramsey plaintiffs sought a continuation of an *overpayment* of monthly benefits. See 2004 WL 1146334 at *1-2; id. at *3-4 (noting that "actual terms of the plan require[d plaintiffs] to be paid less" and what plaintiffs sought to recover was "reliance interest in the representations made" by defendant "about their [overestimated] monthly benefits"). The plaintiffs were, therefore, seeking legal restitution now unavailable under § 502 (a)(3). See also Callery v. U.S. Life Ins. Co. in City of N.Y., 392 F.3d 401, 405 (10th Cir. 2004) (holding that claim "most accurately construed as one for reliance damages" was no longer available).

29. See *supra* n. 11.

15

Moreover, the continuing vitality of the Third Circuit's decision in Luby, extending the federal common law from *employers* to *fiduciaries,* may well be in question in view of intervening Supreme Court cases. Last year, in a thoughtful opinion, the Fifth Circuit distinguished its earlier decision recognizing an *employer's* right to recover overpayment of contributions from a plan, see Jamail v. Carpenters District Council of Houston Pension & Welfare Trusts, 954 F.2d 299 (5th Cir. 1992), and concluded that, in light of the subsequent Supreme Court opinions in Mertens v. Hewitt Assocs., 508 U.S. 248, 257-58 (1996), and Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 214 (2002), the *fiduciary* of a multiple-employer plan does not have a claim for reimbursement of benefit overpayments against a participant under either ERISA or a federal common law theory of unjust enrichment or restitution. See Cooperative Benefit Administrators, Inc. v. Ogden, 367 F.3d 323 (5th Cir. 2004).

The Ogden Court observed that § 502(a)(3), as interpreted by the Supreme Court, reflects a Congressional intent to limit fiduciaries' remedies to "categories of relief . . . typically available in equity" and does not permit their action for monetary damages. Ogden, 367 F.3d at 331 (quoting Mertens, 508 U.S. at 255-56).[33]   It went on to hold that because ERISA's text specifically addresses the issue of whether a plan fiduciary has a right to pursue a claim for legal relief, there is no "gap" in ERISA on that question and no basis for granting a federal common law remedy. See Ogden, 367 F.3d at 332.

---

32. (...continued)
uncommon").

33. See *supra,* text at nn. 26-28.

17

The Ogden Court expressly declined to follow Waller, noting that the Fourth Circuit case (1) was decided prior to the relevant Supreme Court opinions; (2) declined to apply § 502(a)(3) to an administrator's claim because that provision was not referred to in the administrator's complaint and "there [was] seemingly little or no authority" for its applicability to administrators at that time;[34] and (3) granted a federal common law remedy solely because §502(a)(2)(B), on which the administrator did allege jurisdiction, provided an action for recovery of benefits to participants and beneficiaries but not fiduciaries. See id. at 334-35.

In rejecting Waller some fourteen years later, the Fifth Circuit drew an important distinction between a federal common law right in *employers*, who are not provided any relief under § 502(a)(3), and *fiduciaries*, who are. In so doing, it emphasized that federal courts are constrained to create federal common law only to fill in the interstices of ERISA and that they must respect Congress' extensive regulatory network and its intention to occupy the field. See Ogden, 367 F.3d at 329-30 (noting that courts' "power to create federal common law is premised on congressional authorization to fill interstitial gaps in the text of federal legislation" and that federal courts "do not have authority under ERISA to create federal common law when that statute 'specifically and clearly addresses the issue before th[e] Court'") (quoting Jamail, 954 F.2d at 303).[35]

---

34. Waller, 906 F.2d at 988 & n. 6.

35. See also Van Orman v. American Ins. Co., 680 F.2d 301, 312 (3d Cir. 1982); U.S. Steel Mining Co. v. District 17, United Mine Workers of America, 897 F.2d 149, 153 (4th Cir. 1990) (concluding that federal courts are "constrained to fashion only those remedies that are appropriate and necessary to effectuate the purposes of ERISA"); Degan v. Ford Motor Co., 869 F.2d 889, 895 (5th Cir. 1989) (concluding that power to create federal common law in adjudicating ERISA disputes exists only where ERISA preempts but does not address issue)

(continued...)

Because § 502(a)(3) "arms plan fiduciaries with a cause of action "to obtain . . . appropriate equitable relief", and because the Supreme Court carefully emphasized in <u>Great-West Life</u> that Congress's limitation to equitable relief was deliberate, the Fifth Circuit concluded it was not now free to "grant . . . a federal common law right that would, in effect, allow [the plan] to circumvent the plain language of ERISA's text" and to obtain legal restitution. <u>Id.</u> at 330-31 (citing 534 U.S. at 220-21).[36]

Later last year, the Sixth Circuit noted that the Supreme Court's intervening opinions, including <u>Great-West Life</u>, compelled it to "abandon" its prior position that federal common law provided a basis for a fiduciary's reimbursement claim. See <u>Qualchoice, Inc. v. Rowland</u>, 367 F.3d 638, 642 (6th Cir. 2004). Most recently, the Eight Circuit has similarly held that "because there is no gap in ERISA's text regarding a fiduciary's right to bring a civil action for legal remedies to enforce plan terms or ERISA provisions, a federal common law remedy cannot be recognized." <u>North American Coal Corp. v. Roth</u>, 395 F.3d 916, 917-18 (8th Cir. 2005) (referring to § 1132(a)(3) and citing <u>Great-West Life</u> and <u>Ogden</u>).[37]

---

35. (...continued)
(citations omitted).

36. <u>See</u> <u>id.</u> at 331 (noting that "'[t]he authority of courts to develop a 'federal common law' under ERISA is not the authority to revise the text of the statute'") (quoting <u>Mertens</u>, 508 U.S. at 259).

37. <u>See also</u> <u>Space Gateway Support v. Prieth</u>, 2005 WL 1243771, *5 (M.D. Fla. May 25, 2005) (declining to recognize federal common law claim for unjust enrichment in retirement plan fiduciary and noting that although "[t]he Eleventh Circuit has not ruled on this particular issue, [it] has indicated an unwillingness to extend the remedies provided for in ERISA"); <u>id.</u> (stating that "'carefully integrated civil enforcement provisions found in [ERISA section 502(a)] . . . provide strong evidence that Congress did not intend to authorize other remedies'") (quoting <u>Sanson v. Gen. Motors Corp.</u>, 966 F.2d 618, 622 (11th Cir. 1992)).

The Third Circuit's ERISA-related federal common law unjust enrichment is also premised on the absence of a statutory remedy for *employers* and was extended to fiduciaries without regard to Congress' provision of a limited remedy for fiduciaries in § 502(a)(3). See *supra* at 15 & n. 30. The Circuit's opinion also pre-dates the Supreme Court's explications of § 502(a)(3) in both Mertens and Great-West Life. And the Circuit has also acknowledged its obligation to confine its adoption of federal common law to "fill in interstices of ERISA and further the purposes of ERISA." Luby, 944 F.2d at 1186 (citing Plucinski, 875 F.2d at 1058). It would thus appear that Luby, if subjected to the same consideration of subsequent Supreme Court decisions applied by several other Circuits, may be in question.[38]

Finally, if, as the Fifth and Eighth Circuits and other courts have recently held, a fiduciary defendant is limited to the remedies provided by Congress under § 502(a)(3), to the extent that Defendants seek legal restitution, it may well be unavailable. Cf. Sackman v. Teaneck Nursing Center, 2003 WL 23173649 (3d Cir. Dec. 4, 2003) (vacating grant of summary judgment and remanding with instruction to dismiss cause of action where claim for restitution *at law* under § 502 (a)(3) was unavailable after Great-West Life, and Fund could not recover from Union

---

38. This Court notes that its sister court in the Middle District of Pennsylvania recently concluded that because the Supreme Court's decision in Great-West Life concerned itself with the "express statutory provisions" of § 502(a)(3), it did not affect the Court's continuing recognition of a common law remedy of equitable restitution for employers. See Empire Kosher Poultry, Inc. v. United Food and Commercial Workers Health and Welfare Fund of Northeastern Pennsylvania, 285 F.Supp.2d 573, 580-81 (M.D. Pa. 2003). For the reasons discussed at length, *supra*, this Court finds that decision critically distinguishable. To the extent that the decision in Empire Kosher may be read to suggest that Great-West Life did not impact prior federal court decisions by its clarification of the application of § 502(a)(3) to *fiduciaries'* claims for restitution, this Court respectfully disagrees and observes that the conclusion is not supported by the analysis provided in the Middle District's opinion. See id. (explaining that doctrine of limited cause of action for employers to recover overpayments is not tied to specific language of ERISA statute but is instead guided by principles of equity as defined by the courts).

20

amounts paid on medical claims where basis was personal liability).[39]  For if, as Plaintiff attests,

he has disbursed all his pension benefit funds, no particular property belonging to the Defendants

remains in his possession or control. [40]

This Court brings these concerns to the parties attention, but need not resolve these

questions at this summary judgment stage because, as discussed *infra*, even if a right of recovery

in the fiduciary exists, it turns on equitable factors as to which there are genuine issues of

material fact.

---

39.    Several other Circuit and District Courts have also acknowledged that the Supreme Court's recent explications of § 502(a)(3) prohibit the imposition of personal liability which must underlie an order of restitution against a beneficiary who has disbursed the benefit funds.  See *e.g.*, North American Coal, 395 F.3d at 918 (concluding that plan administrator could impose constructive trust over monies mistakenly overpaid from retirement account, and transferred to credit union by beneficiary with knowledge of unentitlement, but that district court's award of restitution of sum certain and finding of personal liability constituted legal remedies not authorized by ERISA); Leipzig v. AIG Life Ins. Co., 362 F.3d 406, 409 (7th Cir. 2004) (concluding that court had no federal jurisdiction over administrator's counterclaim as pled because § 502(a)(3) grants jurisdiction for equitable claims and "as a rule, a demand for reimbursement is a request for money damages and is therefore legal").  See also Variety, 516 U.S. at 514-15 (indicating that "in fashioning 'appropriate' equitable relief" courts should "respect the 'policy choices reflected in the inclusion of certain remedies and the exclusion of others'").

40.    See Honolulu Joint Appenticeship v. Foster, 332 F.3d 1234 (9th Cir. 2003) (holding that fund had no remedy of reimbursement, in part because there was no identifiable res of money); Sheet Metal Local #24 Anderson, Trustee v. Newman, 2002 WL 1033739 (6th Cir. 2002) (same); Greenes v. Adornato, 2004 WL 213089, *1 (S.D.N.Y. Feb. 4, 2004) (holding that pension fund could not sue plan participant for return of monies trust improperly paid to him "pursuant to several remedies the [fund] characterize[d] as 'equitable'" if the defendant had dissipated the funds).  Cf. Michaels v. Breedlove v. Congress Financial Corp., 2004 WL 2809996, *1-2 (3d Cir. Dec. 8, 2004) (discussing non-availability of legal restitution under § 502(a)(3) and distinguishing equitable restitution seeking "recovery of money or property which 'could clearly be traced to particular funds or property in the defendant's possession'") (quoting Great-West Life, 534 U.S. at 213).

b. <u>Entitlement to Summary Judgment Under Unjust Enrichment and/or Trust Theories</u>

Federal common-law restitution is to be used to further the purposes of ERISA and is governed by general equitable principles. <u>Luby</u>, 944 F.2d at 1186. <u>See also Airco Industrial Gases, Inc. v. Teamsters Pension Trust Fund of Philadelphia</u>, 668 F.Supp. 893, 901 (D. Del. 1987) ("'Even where a person has received a benefit from another, he is liable to pay therefore only if the circumstances of its receipt or retention are such that . . . it is unjust for him to retain it.'") (quoting Restatement of Restitution § 1, comment c).[41]

A fund's negligence in making a mistaken payment does not, in itself, bar restitution. <u>Luby</u>, 944 F.2d at 1186 (noting that "under the federal common law of unjust enrichment, restitution of a mistaken payment is permitted even if payment was caused by the negligence of the party seeking restitution").[42]    The Court must, nonetheless, consider various factors in weighing  the equities of restitution in the particular case.[43]

---

41. <u>Cf.</u> <u>U.S. Steel Mining Co. v. District 17, United Mine Workers of America</u>, 897 F.2d 149, 153 (4th Cir. 1990) (observing that federal courts creating additional rights under the rubric of federal common law "are constrained to fashion only those remedies that are appropriate and necessary to effectuate the purposes of ERISA").

42.    <u>See also Waller</u>, 906 F.2d 985 (requiring reimbursement of monies advanced to disability benefit plan participant in accordance with express plan provisions, despite plan's negligent failure to obtain signed repayment agreement).

43.    <u>See</u> <u>Phillips v. Maritime Association-I.L.A. Local Pension Plan</u>, 194 F.Supp.2d 549, 555 (E.D. Tex 2001) (citing <u>Luby</u> for its holding that "while fault does not necessarily preclude restitution, a party's culpability is an appropriate equitable consideration"); <u>Agathos v. Starlite Motel</u>, 60 F.3d 143, 148 (3d Cir. 1995) (concluding that welfare fund was not entitled to recoupment where its "inaction . . . caused it to pay money . . . that otherwise would not have been paid").

    <u>See also Adams</u>, 2005 WL 1330682 (explaining that fiduciary breached its duty by materially misleading plan participant as to pension benefits, regardless of whether its statements

(continued...)

In <u>Luby</u>, the Court "reviewed and [found] without merit [the payee]'s arguments that the

Fund [was] not entitled to restitution because she materially changed her position, to her

detriment, in reliance on the mistaken benefit payment." <u>Id.</u> [44] It further concluded that, because

the Fund erroneously paid a lump-sum death benefit to the deceased employee's paramour and

was thereafter required by the District Court to pay such benefit to the employee's surviving

spouse, restitution would "*only* further the goals of ERISA . . . to safeguard the corpus of funds

set aside . . . for valid . . . Fund beneficiaries." <u>Id.</u> (emphasis added).[45] Clearly, then, under

<u>Luby</u>, where there are no equitable concerns as to the mistaken payee, and an interest in

---

43. (...continued)
or omissions were made negligently or intentionally, and considering negligence among factors
in determining equitable resolution regarding benefit overpayments) (citing <u>Krohn v. Huron
Mem'l Hosp.</u>, 173 F.3d 542, 547 (6th Cir. 1999)); <u>id.</u> (holding that overstatement of monthly
pension benefits would clearly constitute violation of ERISA's fiduciary duty to "communicate
accurately with a beneficiary").

Determination of a right to, as well as the extent of, recoupment in this case is for the Court.
See <u>Airco Industrial Gases, Inc. v. Teamsters Pension Trust Fund of Philadelphia</u>, 668 F.Supp.
893, 894 n. 1 (D. Del. 1987) (stating that "fact of mistake . . . permits . . . Court to determine the
question of restitution"); <u>Luby</u>, 944 F.2d at 1179 (noting that district court concluded Fund was
entitled to restitution from payee following bench trial). <u>See</u> <u>also</u> *supra* n. 2.

44. This Court rejects Defendants' contention that the decision suggests the Third Circuit did not
consider detrimental reliance to be a "decisive factor." <u>See</u> Memorandum in Support of
Defendants' Motion for Summary Judgment at 14. To the contrary, the Circuit's express
observations regarding the merits of the payee's factual assertions regarding detrimental reliance
suggest its recognition of that factor's role in an equitable determination.

The Court also rejects Defendants' contention that overpayments of less than $30,000 could
not "[a]s a matter of law . . . rise to the level of materially changing the participant's position"
such that recoupment would be inequitable. <u>See</u> <u>id.</u>

45.   The woman with whom Luby (the employee in question) lived was designated on his last
beneficiary card, but had filed no claim with the Fund. She was paid in lieu of Luby's surviving
spouse when the latter filed a death benefit claim, and litigation rapidly ensued. There was,
therefore, little if any time for detrimental reliance.

mitigating a reduction of trust assets by an erroneous payment from the trust in excess of that anticipated in the calculation of employer contributions, the Court may rightfully require that the payee make restitution to the Fund.

But the case at hand does not suggest a comparable balance. To the contrary, it raises significant equitable concerns regarding the nine-year duration and extent of Plaintiff's reliance on the Fund's erroneous pension information and benefit payments, as to, *e.g.*, lifestyle and financial planning.[46] It also raises as yet unanswered questions regarding the relationships amongst the Benefit Analyst's error, payments made to Plaintiff, and employer contributions made to the Fund. See Phillips, 194 F.Supp.2d at 555.[47] And it raises questions of degree of fault and/or breach of fiduciary duty also not resolved by reference to Luby.[48]

---

46. Compare Waller, 906 F.2d at 993-94 (requiring restitution by beneficiary where "three elements encompassing the equitable remedy of unjust enrichment" were present, *i.e.*: plan had reasonable expectation of repayment of monies advanced, beneficiary was aware of repayment requirement when she requested advance, and interests of society as reflected in goals of ERISA would be served by repayment).

47. In Phillips, the District Court observed that "[w]hen applying an equitable doctrine for purposes of recoupment, it is critical to consider the circumstances surrounding the overpayments." 194 F.Supp.2d at 555. It considered "the breach of fiduciary duty by [Defendant], the Plaintiffs' resulting change of position, the balance of equities, and the principles of restitution . . . ." Id. Evaluation of "the equities in [the] case and ERISA's guiding principles . . . led the court to conclude that restitution [was] not an appropriate remedy." Id.

See also Adams, 2005 WL 1330682, *51 (where administrative fiduciary misrepresented/overstated amount of pension covered employee would received, benefit amount would be equitably corrected going forward, but court would not require employee to return excess payment made prior to discovery of error). In so holding the District Court noted that the beneficiary had no role in the miscalculation of his retirement benefits, that the entire blame lay on the plan and the employees entrusted with that task, and that the evidence showed "careless inattention to detail" in the administration of the plan.

48. Thus, to the extent Defendants rely upon Luby in asserting that, regardless of its fault for
(continued...)

24

Finally, this Court notes the general applicability of the doctrine of laches to equitable claims. See Gruca v. U.S. Steel Corp., 495 F.2d 1252, 1258 (3d Cir. 1974) (noting that, as it is an equitable doctrine, the decision to apply laches is left to the discretion of the district court). Latches arises when a defendant's position is so prejudiced by length of time and inexcusable delay, plus attendant facts and circumstances, that it would be injustice to permit the assertion of a claim against him. See, e.g., Burke v. Gateway, 441 F.2d 946, 949 (3d Cir. 1971); Jacobs v. Halloran, 710 A.2d 1098, 1102 (1998). Plaintiff alleges that information regarding his correct pension benefits was entirely within the Fund's control, that it should not have made and should have discovered its error, and that he relied on the misinformation provided by the Fund to his

---

48. (...continued)
overpayment, the Fund is entitled to restitution via benefit withholding as a matter of law in this case, they are in error. See Memorandum of Law in Support of Defendants' Motion for Summary Judgment at 2.

    Additionally, the alternative restitution theories identified by Defendants as the equitable doctrine of recoupment under Luby or the common law of trusts under the Restatement (Second) of Trusts, § 254, invoke similar equitable considerations. See § 254, comment d (providing an exception to general rule of trustee's entitlement to recoup overpayment from one of several beneficiaries where "beneficiary had no notice that he was overpaid and has so changed his position that under all the circumstances it is inequitable to the beneficiary to permit such recovery"). Indeed, the Restatement identifies the following factors "of importance in determining whether it is inequitable to allow the trustee indemnity": (1) what disposition the beneficiary has made of the overpayment; (2) the overpayment amount; (3) the nature of the trustee's mistake, e.g., negligence; and (4) the time elapsed since the overpayment was made. See id. Finally, it provides that "the trustee may be denied indemnity or the court may permit" timed recoupments from trust income accruing to the beneficiary. See id.; see also Memorandum in Support of Defendants' Motion for Summary Judgment at 15-16 (acknowledging same). Cf. King v. Railroad Retirement Bd., 981 F.2d 365 (8th Cir. 1992) (noting that although Railroad Retirement Board had express statutory authorization to recover erroneous excess benefit payments at any time, recovery might be waived where beneficiary was without fault and recovery would be against equity).

detriment.   Accordingly, the genuine issues of material fact identified *supra* may relate to whether Defendants' counterclaim is time barred as well as to the balance of the equities.[49]


## III. CONCLUSION

For the reasons set forth above, it is recommended that the Motion for Summary Judgment be denied.

In accordance with the Magistrates Act, 28 U.S.C.  § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.


LISA PUPO LENIHAN
United States Magistrate Judge


Dated: July / 7, 2005


cc:     The Honorable Sean J. McLaughlin
        United States District Judge

---

49.  Cf. Burger v. Life Ins. Co. of North America, 103 F.Supp.2d 1344, 1349 (N.D. Ga. 2000) (holding that insurance company that mistakenly overpaid plaintiff long-term disability benefits for three years waived right to recoupment, and ordering repayment to beneficiary of amounts subsequently withheld from benefit checks); id. at 1348 (noting that where insurer "sleeps on its rights" and the insured relies thereon, the former loses its right for an equitable recovery).

James E. Spoden
Walter E. Deacon, III
MacDonald, Illig, Jones & Britton
100 State St.
Suite 700
Erie, PA 16507
Counsel for Plaintiff

Stephen M. Rosenblatt
601 North Fairfax St.
Suite 500
Alexandria, VA 22314
Counsel for Defendant